# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| --- | --- | --- |
| | : | NO. 15-0021-6 |
| v. | : | |
| | : | CIVIL ACTION |
| JOSEPH MITCHELL, SR. | : | NO. 17-2927 |
| *Defendant- pro se* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                              OCTOBER 25, 2017

# MEMORANDUM OPINION

Before this Court is a *motion under 28 U.S.C. §2255, to vacate, set aside, or correct sentence by a person in federal custody* filed by Defendant Joseph Mitchell, Sr., ("Defendant'') (Doc. 773), proceeding *pro se,* and the Government's response in opposition. (Doc. 789). The issues raised in Defendant's motion have been fully briefed and are, therefore, ripe for disposition.

For the reasons stated herein, Defendant's motion is denied.

**BACKGROUND**

On July 14, 2015, Defendant was charged in Count Two of the Second Superseding Indictment with conspiracy to distribute Schedule II controlled substances in violation of 21 U.S.C. § 846. (Doc. 74). This conspiracy charge arose from Defendant's participation in a pill-mill scheme to obtain prescriptions of controlled substances, including oxycodone, Percocet and methadone, for no legitimate medical purpose. On February 26, 2016, Defendant pled guilty to the conspiracy charge pursuant to a written plea agreement negotiated by the parties. As noted in the pertinent provisions of the plea agreement, Defendant agreed, *inter alia,* that he would not appeal or present any collateral challenge to his conviction and/or sentence,

with the exception, under limited circumstances, for claims of constitutionally ineffective assistance of counsel. (*See* Guilty Plea Agreement, Doc. 343, at ¶10).

Consistent with this Court's practice, the Probation Department prepared a presentence report ("PSR") for use at sentencing. Based upon the criminal offense to which Defendant pled guilty and his prior criminal history, the advisory sentencing guidelines were calculated as follows: Defendant's total offense level was 31, with a criminal history of III, which resulted in an advisory sentencing guideline range of 135 to 168 months of imprisonment. At the sentencing hearing on October 13, 2016, the Government argued for a sentence within the advisory guidelines, citing to, *inter alia*, Defendant's gang affiliation, the opioid epidemic, and the seriousness of the offense. Defense counsel argued for a downward variance. After consideration of these arguments, Defendant's allocution, and the 18 U.S.C. §355(a) factors, Defendant was sentenced to a 108-month term of imprisonment, followed by three years of supervised release, a fine of $1,500.00, and a special assessment of $100.00. Defendant did not appeal the conviction or sentence, but instead, on June 28, 2017, filed the instant motion, primarily arguing trial counsel's effectiveness.

**LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may move to vacate, set aside, or correct his/her sentence under 28 U.S.C. §2255 only on the grounds that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral review . . . ." 28 U.S.C. §2255(a). However, a motion under §2255 is a collateral challenge that is viewed less favorably than a direct appeal, and "relief

2

under §2255 is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and ... present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent.'" *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)). If a court finds that the judgment or sentence imposed was not authorized by law, or that there has been such a denial or an infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall either discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate. 28 U.S.C. §2255(b).

**DISCUSSION**

In his motion to vacate, set aside, or correct his sentence, Defendant contends that his trial counsel was ineffective for failing to: (1) file a direct appeal as instructed by Defendant; (2) order an IQ test, psychiatric or psychological evaluation prior to the sentencing; and (3) file a direct appeal to challenge the district court's decision to apply a two-level role enhancement. Defendant also challenges the disparity between his sentence and the sentences imposed on other codefendants.

In its response, the Government essentially argued that in a transparent attempt to circumvent the appeal waiver provisions that Defendant voluntarily and knowingly agreed to in the plea agreement, Defendant is challenging the length of his sentence under the guise that counsel's assistance at sentencing was constitutionally ineffective. This Court's analysis begins with a consideration of whether Defendant knowingly and voluntarily waived his appellate rights.

It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted). Such waivers can include the waiver of the right to file a direct appeal and/or a motion to vacate, set aside or correct sentence under 28 U.S.C. §2255 in a plea agreement with the government. *Id*. at 236, 241; *see also United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015) (holding "we will enforce appellate or collateral–attack waivers when they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice."). Waivers of appellate rights in criminal cases do not contravene public policy and should be strictly construed. *See United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001).

In determining the validity of such a waiver, a district court must examine "the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *Mabry*, 536 F.3d at 237. A criminal defendant has the initial burden "of presenting an argument that would render his waiver unknowing or involuntary." *Id*. at 237-38. The district court has "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id*.

Here, unlike in *Mabry* where the defendant actually argued that his waivers of collateral and appellate review were not knowing and voluntary, Defendant has not asserted that his signed plea agreement, which provided for the waiver of his appellate rights, was not entered into knowingly and voluntarily, Defendant's first hurdle. Regardless, this Court has "an independent obligation to conduct an evaluation of the validity of [an appellate] waiver." *Id*. at 238. In so doint, this Court will review the written plea agreement and the guilty plea colloquy. *See United*

4

*States v. Gwinnett*, 483 F.3d 200, 203-04 (3d Cir. 2007). Paragraph 10 of Defendant's guilty plea agreement provides:

> In exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. §3742, 28 U.S.C. §1291, 28 U.S.C. §2255, or any other provision of law.
>
> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal or petition for collateral relief but may raise only a claim, if otherwise permitted by law in such a proceeding:
>
> (1) that the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above;
>
> (2) challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;
>
> (3) challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and
>
> (4) that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

(*See* Guilty Plea Agreement, Doc. 343). In the plea agreement, Defendant represented that he was "satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead

5

guilty because the defendant admits that he is guilty." (*Id*. at ¶14). Defendant and his attorney signed the plea agreement.

The language of paragraph 10 of the plea agreement, the waiver provision, is clear and unambiguous. The waiver expressly provides that Defendant "voluntarily and expressly waives all rights to appeal" his conviction and sentence on any grounds, constitutional or statutory, other than those expressly set forth in the agreement. Defendant signed the agreement, acknowledging that he fully understood the meaning of the waiver and voluntarily agreed to it.

Further, a careful review of the transcript of Defendant's guilty plea colloquy confirms that Defendant's waiver was knowing and voluntary. At the guilty plea hearing, this Court addressed Defendant's competence to enter into a plea agreement, and specifically addressed the waiver of his appellate rights. Specifically, Defendant confirmed that he graduated from high school and that he could read, write, and understand the English language. He also confirmed that his attorney had explained the elements of the charges against him, the possible penalties, and the rights that he would be giving up by entering a guilty plea, and that he had understood the Court's explanation of the on the elements, his penalty exposure and the waiver of his appellate rights. Defendant also confirmed that his attorney had discussed the terms of the plea agreement with him, and that he was satisfied with the advice his counsel had given him. Most significant to the underlying motion, Defendant confirmed that he understood that he was waiving, with limited exceptions, his right to appeal his conviction and sentence. On numerous occasions, he also confirmed that he was entering his guilty plea voluntarily, or his own free will. Notwithstanding these affirmations, this Court carefully highlighted these and other provisions, and examined Defendant's understanding of them. In light of this record, this Court finds today, as it did at the time of the guilty plea, that not only was his guilty plea freely and intelligently

entered, but that Defendant's waiver of his appellate rights was also knowingly and voluntarily made.

Having determined that Defendant's waiver of his appellate rights was knowingly and voluntarily made, this Court next considered "whether [the] enforcement [of the waiver] would work a miscarriage of justice" under the facts of this case. *Mabry*, 536 F.3d at 237. The Third Circuit Court of Appeals has articulated a non-exhaustive list of factors for determining whether such enforcement would result in a miscarriage of justice. *Id.* at 243-44. Those factors include, *inter alia*, the existence of error, the severity and character of error, the effect of error on the defendant, the effect of rectifying error on the government, and the degree to which the defendant assented to error. *Id*. (citing *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001). However, "[c]ourts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Mitchell*, 538 F. App'x 201, 203 (3d Cir. 2013) (citing *United Sates v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001)).

After review of the record and consideration of the above factors, this Court finds no facts or circumstances exist amounting to a miscarriage of justice. In weighing the noted factors, this Court opines that since the ultimate issue raised by Defendant, *i.e.*, the length of his sentence, is an issue clearly encompassed by the waiver provision, no miscarriage of justice arises as a result of the enforcement of the waiver provision. Defendant was sentenced to a term of 108 months imprisonment, a sentence below the applicable advisory guideline range of 135 to 168 months. Notably, Defendant has not alleged that his counsel was ineffective in negotiating the plea agreement containing the waiver, and does not allege that he was misled into signing the waiver. Thus, the waiver encompassed any appeal that Defendant may have taken with respect

to his sentence, and, accordingly, the enforcement of Defendant's appellate waiver does not result in a miscarriage of justice. As such, each of the claims asserted in Defendant's underlying §2255 motion, which essentially challenge the sentence imposed, has been waived.

### *Defendant's §2255 Claims Lack Merit*

Notwithstanding this Court's opinion that Defendant's appellate and collateral waivers are enforceable and bar review of each of Defendant's asserted §2255 claims, in the interest of judicial economy, this Court will briefly address the merits of his claims. As noted, in his motion to vacate sentence, Defendant appears to argue that as a result of his counsel's ineffective assistance, this Court imposed a longer sentence than it would have in the absence of the alleged ineffectiveness. Defendant is mistaken.

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a petitioner must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. *Id*. at 687-88; *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007). Conclusory allegations are insufficient to entitle a petitioner to relief under §2255. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The burden is on the defendant in a §2255 motion to prove his claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687.

In determining whether counsel has satisfied the objective standard of reasonableness set forth in the first prong, courts must be highly deferential toward counsel's conduct. *Strickland*, 466 U.S. at 689. A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance. *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989). The court must defer to counsel's tactical decisions, avoiding "the distorting effects of

hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996). To succeed with an ineffective assistance of counsel claim, "a defendant must overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Kaufman*, 109 F.3d 186, 190 (3d Cir. 1997) (citations omitted). Counsel will not be deemed ineffective for failing to raise a meritless claim. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the defendant must show that, but for counsel's errors, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). A district court need not conduct its analysis of the two prongs in a particular order or address both prongs of the inquiry if a defendant makes an insufficient showing in one of the prongs. *See Strickland*, 466 U.S. at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).

In his first claim, Defendant contends that his trial counsel was ineffective for failing to file a direct appeal of his sentence as directed by Defendant. Similarly, in his third claim, Defendant contends that his trial counsel was ineffective for failing to file a direct appeal challenging the role enhancement applied to his sentence. As set forth above, Defendant

knowingly and voluntarily waived any direct appeal of his guilty plea and sentence and, consequently, these two claims and argument lack merit. In addition, these two claims do not meet the *Strickland* threshold for an ineffectiveness of counsel claim since pursuant to the plea agreement, Defendant could not, himself or by counsel, have filed a direct appeal. Indeed, where there is a total appellate and collateral waiver, "counsel's duty to protect his or her client's interest militates against filing an appeal" which could cost the client the benefit of the plea bargain against his or her best interest. *Mabry*, 536 F.3d at 240 (quoting *Flores-Ortega Nunez v. United States*, 495 F.3d 544, 547 (7th Cir. 2007)). As such, counsel cannot be deemed ineffective for failing to file a direct appeal where Defendant knowingly and voluntarily waived the right to appeal. *See Mabry*, 536 F.3d at 242 n.14 (noting that if the issue in *Mabry* was limited only "to an ineffectiveness claim and were evaluated under a Strickland analysis, one would wonder how counsel's failure to file a notice of appeal could be considered 'outside the wide range of professionally competent assistance,' if the right to appeal had been knowingly and voluntarily waived.") (citations omitted). Therefore, Defendant's claims (claims one and three) that counsel was ineffective for failing to file an appeal lack merit and are frivolous.[1]

---

[1] Defendant's contention that he should not have been assessed a two-level enhancement is also without merit and belied by the factual guilty plea narration of the Government's case against him. Moreover, at the time of sentencing, this Court addressed this argument and cited to the introductory comment to the United States Sentencing Commission Guidelines ("USSG") § 3B1.1, which provides that adjustments of the offense level based upon the role the defendant played in the offense is to be made on the basis of *all* conduct within the scope of Section 1B1.3-relevant conduct, and that the court must consider the scope of the jointly undertaken criminal activity, in furtherance of the criminal activity and reasonably foreseeable with the criminal activity that occurred during the commission of the offense. As the proffered evidence showed, Defendant recruited seven pseudo-patients to be part of the illegal drug scheme, and pled guilty to obtaining prescriptions for an equivalent amount of 4542.2 kilograms of marijuana. The evidence also showed that Defendant received a kickback for the prescriptions filled by the pseudo-patients he recruited. While Defendant would like this Court to believe he lacked the intellect to be a manager, Defendant's own, admitted actions contradict him. The fact that Defendant recruited others and received a portion of their illegal prescriptions supports a level of control over the recruits which clearly falls within the guideline requirements. Considering the totality of Defendant's admitted criminal activity, the two-level enhancement was appropriate.

In his second claim, Defendant contends that his counsel was ineffective for failing to obtain an "IQ test, psychiatric or psychological evaluation," in lieu of a mitigation specialist, which Defendant argues would support his contention that he lacked the intellectual ability to provide a managerial role in the pill-mill conspiracy or to "truly understand the consequences of the proceedings against him . . . ." A review of the record, however, shows this claim to be without merit.

As part of the sentencing memorandum prepared for Defendant, counsel submitted a comprehensive 19-page *Psychological History and Potential Mitigation* report submitted by Michelle E. Conner, Esquire.[2] This Court was, therefore, thoroughly apprised of Defendant's limitations and struggles, his education, and his childhood traumas and experiences. The presentence report also extensively elaborated on Defendant's background, including his personal history and characteristics, the lack of a father presence, his education, and work experience in the auto body painting business. Although a modest variance was granted when sentencing Defendant, this Court noted that the variance reduction accounted for, *inter alia*, his addiction, his traumatic childhood experience at an early age of seeing a friend murdered, his lack of appropriate intervention to help him cope with the many issues he confronted as a child, as well as the fact that he had never served a lengthy sentence.

As noted, this Court thoroughly examined Defendant's competence to enter his guilty plea. Based on the plea colloquy, this Court determined, as it does again today, that Defendant

---

[2] Ms. Conner is an attorney who provides investigation and mitigation on behalf of individuals being sentenced in the criminal justice system. She also specializes in mental health litigation and guardianships of incapacitated persons. Before becoming a practicing attorney, she served as a staff psychologist at the North Carolina Department of Corrections and the Pretrial Forensic Unit of the Dorothea Dix Hospital, in Raleigh, North Carolina. In addition to her Juris Doctorate, she also holds a Master of Arts in Clinical Psychology and a Bachelor of Science in Psychology.

fully understood the charges against him, the rights he was giving up, and the consequences of his plea agreement. This Court found, and Defendant himself affirmed, that his decision to enter a guilty plea was knowing, intentional, and voluntary. Defendant also understood that the sentence to be imposed would be the decision of this Court. In light of counsel's presentation of the above-described mitigation report and this Court's findings with respect to the voluntariness of Defendant's entry of a guilty plea, Defendant cannot meet either prong of the *Strickland* analysis. Defendant's ineffectiveness claim based on the lack of an IQ test is without merit.

In his last claim, Defendant essentially challenges a purported disparity between his sentence and that received by two of his codefendants. As set forth above, Defendant knowingly and voluntarily waived any appellate challenge to his sentence as part of his plea agreement. Notwithstanding, a challenge to a purported disparate sentence is not cognizable by way of a collateral attack. *See Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 43 (3d Cir. 1984) (holding that the "contention that gross disparity in sentences violates due process or equal protection lacks merit."); *Entrekin v. United States*, 508 F.2d 1328 (8th Cir. 1974) (holding that a "claim of a more severe sentence than that received by . . . a co-defendant[] is not cognizable under §2255."); *Diaz-Cruz v. United States*, 1996 WL 84112, at *1 (1st Cir. Feb. 27, 1996) (holding disparate sentence claim to be non-cognizable on a §2255 motion); *see also United States v. Parker*, 462 F.3d 273, 276 (3d Cir. 2006) (reiterating previous holding that a criminal defendant does not have a constitutional right to a sentence equal to that of his co-defendant). Moreover, Defendant was sentenced before the co-defendants, whose sentences he compares.

In light of the above analysis, Defendant's underlying §2255 claims have been knowingly and voluntarily waived, are unsubstantiated, and lack merit. Accordingly, Defendant's motion to vacate, set aside, or correct sentence is denied.

**CONCLUSION**

For the reasons set forth herein, this Court finds that Defendant's §2255 claims, each of which essentially challenging the length of the sentence imposed, fall within the scope of his voluntary and knowing waiver of his appellate and collateral review of his sentence, and, further that his waiver of appellate rights is enforceable. In the interest of judicial economy, even though further review of Defendant's claims was not warranted, this Court conducted additional analysis and finds that trial counsel was not ineffective and that all of Defendant's claims lack merit. Accordingly, Defendant's motion to vacate, set aside or correct sentence filed pursuant to §2255 is denied. Further, based on the analysis conducted above, no reasonable jurist would disagree with this Court's assessment of Defendant's claims. Accordingly, this Court declines to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, USDC J